**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **LINGARO US INC.,** | * | **Case No. 1:26-cv-1021** |
| | * | |
| Plaintiff, | * | **Judge Matthew R. Byrne** |
| | * | |
| v. | * | |
| | * | |
| **GAURAV ZIBBU, *et al.*,** | * | |
| | * | |
| Defendants. | * | |
| | * | |

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER (ECF 12)**

This matter comes is before the Court on the Motion to Dissolve the Temporary Restraining Order filed by Defendants TheMathCompany, Inc. (doing business as "MathCo") and Gaurav Zibbu. (ECF 10.) Because the evidence Plaintiff Lingaro US, Inc. has adduced did not merit issuance of a temporary restraining order with regard to MathCo, the motion to dissolve the temporary restraining order will be granted with respect to MathCo only. The Court will address the motion to dissolve with regard to Zibbu in a separate order.

## I. BACKGROUND

Lingaro sued MathCo and Zibbu in an Ohio state court, the Hamilton County Court of Common Pleas. Lingaro brought claims for Breach of Fiduciary Duty, Breach of Contract, and Spoliation against its former employee, Zibbu, and a claim of Tortious Interference with Contract against Zibbu's new employer, MathCo. (ECF 5.) Lingaro avers that an employment agreement between Lingaro and Zibbu (the "Agreement") contractually prohibited Zibbu from using or disclosing any of Lingaro's confidential

information and from competing against Lingaro for twelve months after his employment ended, including by soliciting Lingaro's customers or assisting one of Lingaro's competitors. (*Id.* PageID 192-93.)

Lingaro asserts Zibbu, while still employed by Lingaro, shared Lingaro's confidential information with MathCo. Lingaro also asserts that after Zibbu resigned his position with Lingaro, he began working for MathCo in a position similar to his position at Lingaro. Lingaro claims that in this series of events, MathCo intentionally, tortiously, and maliciously interfered with the contract between Lingaro and Zibbu. (*Id.*, PageID 210.)

Lingaro moved for an *ex parte* temporary restraining order based on the facts attested to in its verified complaint. (ECF 1-4, PageID 68-69, 72.) The common pleas court granted the *ex parte* Temporary Restraining Order against Zibbu and MathCo. With respect to MathCo, the Temporary Restraining Order prohibited the company from:

> 1. Employing, consulting with, or using the services of Zibbu for a period of twelve months from the date of this Order [September 28, 2026], and
>
> 2. Accessing, possessing, and/or utilizing for any purpose all Confidential Information owned, maintained, and/or utilized for the benefit of Lingaro.

(*Id.*, PageID 32.)

The next day Zibbu was served notice; the day after that, MathCo was served notice. (*Id.*, 27, 24.) Thereupon Zibbu and MathCo removed the matter from Ohio state court to the Southern District of Ohio, asserting diversity jurisdiction (ECF 1). They also moved this Court to dissolve the Temporary Restraining Order pursuant to Federal Rule of Civil Procedure 65(b)(4). (ECF 3.) Lingaro has responded to the motion to dissolve the temporary restraining order. (ECF 31.)

## II. LAW AND ANALYSIS

In their Motion to Dissolve, MathCo and Zibbu argue that the *ex parte* temporary restraining order should be dissolved because (1) Lingaro's request for a temporary restraining order did not satisfy the four-factor test that applies to requests for injunctive relief, and (2) the *ex parte* Temporary Restraining Order contains procedural defects and exceeds the relief that may be granted in such an order. ECF 12, PageID 255. The Court will address the Defendants' arguments in turn after explaining the standards district courts apply when reviewing Fed. R. Civ. P. 65(b)(4) motions to dissolve temporary restraining orders.

### A. Legal Standard

"Actions that are removed from state court to federal court are to proceed as if they had been commenced in federal court." *Sturgill v. Chema Nord Delekkemi Nobel Indus.*, 687 F. Supp. 351, 354 (S.D. Ohio 1988) (citing *Freeman v. Bee Machine Co.*, 319 U.S. 448, 452 (1943)). "After removal, the federal court 'takes the case up where the State court left it off.'" *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 436 (1974) (citing *Duncan v. Gegan*, 101 U.S. 810, 812 (1880)). "[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." *Id.* at 437.

When "any action" is "removed from a State court to a district court of the United States," "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal…remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. "Furthermore, when evaluating a motion to dissolve a temporary restraining order issued by a state court before removal, 'federal law is applied as though the action was originally commenced [in federal court].'" *Southern Ohio Sand, LLC v.*

*Preferred Proppants, LLC*, 2016 U.S. Dist. LEXIS 50516, *4 (S.D. Ohio 2016) (bracketed text in original).

Federal Rule of Civil Procedure 65(b)(4) provides that a party may move to dissolve or modify a temporary restraining order that was obtained *ex parte*, as was the temporary restraining order at issue here. "The motion to dissolve should be granted where the temporary restraining order was improperly issued." *Southern Ohio Sand*, 2016 U.S. Dist. LEXIS 50516 at *4.

Determining whether a temporary restraining order was improperly issued demands reference to Federal Rule of Civil Procedure 65(b)(1), which governs the issuance of *ex parte* temporary restraining orders. Rule 65(b)(1) provides that a court may issue an *ex parte* temporary restraining order "only if" both of the following conditions are met:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). In reviewing the issuance of a temporary restraining order, the Sixth Circuit applies "the same factors considered in determining whether to issue a [temporary restraining order] or preliminary injunction." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (addressing a motion to stay a temporary restraining order). Those factors include:

> 1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.
> 2. Whether the movant has shown irreparable injury.

3. Whether the preliminary injunction could harm third parties.
4. Whether the public interest would be served by issuing the preliminary injunction.

*Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d d1261, 1263 (6th Cir. 1985). The movant must show that irreparable harm is "likely," not merely possible. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the context of a motion to dissolve a temporary restraining order, the burden remains on the party seeking the injunction to demonstrate that the factors for injunctive relief are satisfied. *Granny Goose*, 415 U.S. at 441; *see also Southern Ohio Sand*, 2016 U.S. Dist. LEXIS 50516, at *4.

In a case involving requested enforcement of a restrictive covenant, injunctive relief may be issued only "where the agreement to be enforced is valid, the agreement's restrictions are reasonable, and the party seeking the injunctive relief has demonstrated irreparable harm." *Prosonic Corp. v. Stafford*, 3539 F. Supp. 2d 999, 1002-03 (S.D. Ohio 2008).

A plaintiff "bear[s] the burden of establishing entitlement to a temporary restraining order… To satisfy this burden, [plaintiff] must establish its case by clear and convincing evidence." *HeartFitt LLC v. HeartHero, Inc.*, No. 1:26-CV-940, 2026 WL 3071524, at *2 (S.D. Ohio Oct. 14, 2026) (citing *Mesa Indus., Inc. v. Charter Indus. Supply, Inc.*, No. 1:22-cv-160, 2022 WL 1044720, at *4 (S.D. Ohio Apr. 7, 2022)).

**B. Analysis of Temporary Restraining Order Against MathCo**

Lingaro only brings one claim against MathCo, for tortious interference. But in its order granting the temporary restraining order, the Hamilton County court failed to make any findings as to Lingaro's likelihood of success with regard to this claim, or even to analyze this claim at all. (*See* ECF 1-4, PageID 30-33.) The Hamilton County court thus

failed to "state the reasons why it issued" the temporary restraining order with respect to MathCo Fed. R. Civ. P. 65(d)(1)(A). We must now engage in that analysis.

Under Ohio law, to prove a tortious interference claim, a plaintiff must establish "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St. 3d 171, 176 (1999).

Here, MathCo and Zibbu admit the first two elements (that is, the existence of a contract between Zibbu and Lingaro, and MathCo's knowledge of that contract) (ECF 3, PageID 165.), but argue that Lingaro only made conclusory allegations regarding the third and fourth elements (that is, intentional procurement of breach, and lack of justification). (ECF 3, PageID 164) MathCo and Zibbu are correct.

In the Verified Complaint, Lingaro alleges that MathCo "knew that the Agreement prohibited Zibbu from competing with Lingaro by working for MathCo in a position that would disclose or threaten the disclosure of Lingaro's Confidential Information." But Lingaro provides no explanation for how MathCo "knew" this to be the case, other than simply assuming that MathCo's interpretation of the terms and enforceability of the Agreement was the same as Lingaro's interpretation.

Lingaro further alleges that "By and through MathCo's misconduct as described above, as well as through any and all further misconduct which may be discovered, MathCo "intentionally interfered" with Lingaro's contract with Zibbu. (ECF 5, PageID 210.) But the "misconduct as described above" appears to be nothing more than a reference to MathCo's knowledge of the Agreement's existence. And while Lingaro points to specific facts concerning *Zibbu's* putative breach of the Agreement, Lingaro does not

point to any specific facts that would allow this Court to conclude that Lingaro would be significantly likely to prove that *MathCo* intentionally procured Zibbu's breach of the Agreement or otherwise prove tortious interference. Lingaro's threadbare allegations regarding MathCo are insufficient to establish a substantial likelihood of success on Lingaro's tortious interference claim by clear and convincing evidence, and simply assume that MathCo engaged in tortious interference.

Besides Lingaro's difficulties with the intentional-procurement-of-breach and lack-of-justification elements of its tortious interference claim against MathCo, it must also establish the likelihood of irreparable harm for injunctive relief to issue. Irreparable harm is "indispensable," and a court is "well within its province" to deny a preliminary injunction on that ground alone. *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019). Indeed:

> district courts weigh the strength of the four factors against one another. But even the strongest showing on the other three factors cannot "eliminate the irreparable harm requirement." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit. *See id.* at 103; *see also* Wright et al., *supra*, § 2948.1 (Irreparable injury is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction[.]"). That's why this circuit has held that a district court abuses its discretion "when it grants a preliminary injunction without making specific findings of irreparable injury[.]" *Friendship Materials*, 679 F.2d at 105. Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory.

*D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019).

The movant must show "actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006)

(internal quotation marks omitted). "The harm alleged must be both certain and immediate, rather than speculative or theoretical," and "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (internal quotation marks omitted).

Lingaro has not presented evidence that meets this standard with respect to MathCo. Instead, Lingaro simply asks this Court to assume that MathCo will soon cause irreparable harm to Lingaro. The Verified Complaint *does* contain factual allegations concerning the possibility that Zibbu will cause irreparable harm to Lingaro. But Lingaro and Zibbu entered into the Agreement which forms the basis for these allegations. MathCo did not sign that Agreement, and the record currently before the Court does not allow us to conclude that Lingaro has established "actual and imminent" harm that MathCo will cause to Lingaro by tortiously interfering with the Agreement between Lingaro and Zibbu if not enjoined.

Tellingly, Lingaro requests monetary damages from MathCo as relief with respect to MathCo's alleged tortious interference. (ECF 5, PageID 211.) A plaintiff's asserted harm is not irreparable if it is "fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 519 (9th Cir. 1984) (reiterating "the principle that the exercise of equitable jurisdiction is predicated on the absence of an adequate remedy at law."). Lingaro decries competition and disclosure of confidential information (ECF 5, PageID 210) that could potentially lead to Lingaro losing three major customers. (*Id.*, PageID 197.) These customers presumably compensate

Lingaro with money and at this stage of the litigation this would appear to be the measure of Lingaro's damages, should it prevail on the merits of its tortious interference claim against MathCo. Lingaro thus has an adequate remedy at law should it prevail. *See Tennessee v. Nat'l Collegiate Athletic Ass'n,* 715 F. Supp. 3d 1048, 1057 (E.D. Tenn. 2024) ("[T]he claim is that student-athletes will receive *less* compensation in the absence of a [temporary restraining order]. But the difference is purely monetary....").

For all these reasons, the Temporary Restraining Order was improperly issued with respect to MathCo.

This analysis is based on the limited record before the Court at this time. The Court will analyze Lingaro's motion for a preliminary injunction against MathCo based on the evidence presented at the upcoming preliminary injunction hearing.

## III. CONCLUSION

It is therefore ORDERED that the temporary restraining order is dissolved to the extent it enjoins MathCo. The Court will address the remainder of the Temporary Restraining Order—which applies to Zibbu—in a subsequent order.

**IT IS SO ORDERED.**

Friday, November 6, 2026

Matthew R. Byrne
United States District Judge